**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

GHALEB MOHAMMAD ISHAQ MR. HIJAZI )
d/b/a/ )
LAMP OF LIBERTY (a/k/a *Misbah al Hurriyya*) )
)
   *Plaintiff,* )
)
   v. )
)
ATLAS ECONOMIC RESEARCH FOUNDATION, )
THE CATO INSTITUTE, and )
TOM G. PALMER, )
)
   *Defendants.* )
_____)

Civil Action No.
1:09-cv-01123

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF**

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 1

II. PROCEDURAL HISTORY ............................................................................................. 3

III. UNDISPUTED FACTS .................................................................................................. 4

IV. SUMMARY JUDGMENT STANDARD ....................................................................... 4

V. ARGUMENT ................................................................................................................... 5

    A. With No Valid Copyright and No Infringing Act by Defendants, Mr. Hijazi's Claim for Copyright Infringement (Count 1) Must Fail ........................................................ 5

        1. The Copyrights that Mr. Hijazi Claims to Own Belong to Defendants ........................ 6

            a. The Lamp of Liberty Logo ............................................................. 7

            b. The 2007 Website Design ............................................................. 8

            c. Original Work by Mr. Hijazi, if Any Exists, is Work Made for Hire for the Benefit of Cato ............................................................................ 10

            d. Even if Mr. Hijazi's Contribution Was Not "Work Made for Hire," the Greatest Interest Mr. Hijazi Could Have in Any Copyrights Would Be as a Co-owner of a Joint Work ............................................................................ 12

        2. Defendants Did Not Engage in Any Infringing Act ..................................................... 12

    B. Defendants, Not Hijazi, Own the Misbah al Hurriyya Trademark (Count 2 – Unfair Competition, False Representation and Designation of Origin – Federal; and Count 3 – Trademark, Trade Name Infringement, Unfair Competition and Misappropriation – Common Law) ............................................................................................................... 14

        1. Plaintiff Does Not Own a Valid Mark Entitled to Protection ....................................... 15

            a. Mr. Hijazi has Never Used the Mark in Commerce. .......................... 15

            b. Hijazi's Alleged Use of the Misbah al Hurriyya Mark Does Not Designate a Source of Origin ............................................................................ 19

        2. Plaintiff Cannot Show Likelihood of Confusion ......................................................... 20

    C. The Common Law Torts of Trespass (Count 4) and Conversion (Count 8) Do Not Protect Plaintiff's Purported Property Interests ......................................................... 22

    D. Mr. Hijazi Cannot Prove Unjust Enrichment (Count 5):  Cato Was Not Enriched and Mr. Hijazi Was Fully Compensated for His Work ......................................................... 24

    E. Cato and Palmer Did Not Interfere With Plaintiff's Contracts (Count 7) and Could Not Interfere With Contracts to Which Cato Was a Named Party ................................... 25

    F. Cato and Palmer Did Not Interfere With Plaintiff's Nebulous "Business Opportunity" With Media Plus (Count 6) ................................................................................... 26

    G. Mr. Hijazi's Media Contact List is Not a Trade Secret (Count 9) and it Was Not Misappropriated .................................................................................................... 28

H.  Defendants Are Entitled to Summary Judgment on Plaintiff's Claim for Monetary
Damages and Injunctive Relief ........................................................................ 30

VI. DEFENDANTS ARE ENTITLED TO JUDGMENT ON THEIR COUNTERCLAIMS ...... 33

VII.    CONCLUSION ........................................................................................................ 33

# TABLE OF AUTHORITIES

**Cases**

*accord 3D Global Solutions, Inc. v. MVM, Inc.*,
  552 F. Supp. 2d 1 (D.D.C. 2008) .................................................................................. 23

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................................... 4, 5

*Basile, S.p.A. v. Basile*,
  899 F.2d 35 (D.C. Cir. 1990) ...................................................................................... 20

*Blue Bell, Inc. v. Farah Manufacturing, Co.*,
  508 F.2d 1260 (5th Cir. 1975) ..................................................................................... 16

*Carr v. Brown*,
  395 A.2d 79 (D.C. 1978) ........................................................................................... 27

*Catalyst & Chemical Servs., Inc. v. Global Ground Support*,
  350 F. Supp. 2d 1 (D.D.C. 2004) ................................................................................. 28

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .............................................................................................. 4, 5, 9

*Columbus Properties, Inc., v. O'Connell*,
  644 A.2d 444 (D.C. 1994) .......................................................................................... 31

*Community for Creative Non-Violence v. Reid*,
  490 U.S. 730 (1989) ..................................................................................... 6, 7, 10, 11

*DSMC, Inc. v. Convera Corp.*,
  479 F. Supp. 2d 68 (D.D.C. 2007) ................................................................ 6, 12, 28, 29

*Federation Internationale De Football Assoc. v. Nike, Inc.*,
  285 F. Supp. 2d 64 (D.D.C. 2003) .......................................................................... 15, 20

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
  499 U.S. 340 (1991) .................................................................................................... 6

*Ficken v. AMR Corp.*,
  578 F. Supp. 2d 134 (D.D.C. 2008) ........................................................................ 23, 24

*Furash & Co., Inc. v. McClave*,
  130 F. Supp. 2d 48 (D.D.C. 2001) .......................................................................... 26, 27

*Gaiman v. McFarlane*,
  360 F.3d 644 (7th Cir. 2004) ...................................................................................... 10

*Hartford Accident & Indemnity Co. v. Dikomey Manufacturing Jewelers, Inc.*,
  409 A.2d 1076 (D.C. 1979) ......................................................................................... 32

*Hydro-Dynamics, Inc. v. George Putnam & Co. Inc.*,
  811 F.2d 1470 (Fed. Cir. 1987) ................................................................................... 16

*Jordan Keys & Jessamy, LLP v. St. Paul Fire and Marine Ins. Co.*,
  870 A.2d 58 (D.C. 2005) ........................................................................ 24

*Kaempe v. Myers*,
  367 F.3d 958 (D.C. Cir. 2004) ......................................................... 22, 23

*Litecubes, LLC v. Northern Light Prods., Inc.*,
  523 F.3d 1353 (Fed. Cir. 2008).............................................................. 13

*Lotus Dev. Corp. v. Borland Int'l, Inc.*,
  49 F.3d 807 (1st Cir. 1995)................................................................. 6, 12

*Lucasfilm Ltd., v. High Frontier, et al.*,
  622 F. Supp. 931 (D.D.C. 1985)............................................................. 15

*Majorica, S.A. v. Majorca International, Ltd.*,
  687 F. Supp. 92 (S.D.N.Y. 1988)............................................................ 31

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986).................................................................................. 4

*Mayeske v. Int'l Ass'n of Fire Fighters*,
  905 F.2d 1548 (D.C. Cir. 1990) ........................................................ 10, 11

*NCRIC, Inc. v. Columbia Hosp. for Women Med. Ctr., Inc.*,
  957 A.2d 890 (D.C. 2008) ............................................................... 25, 26

*Palmer v. Braun*,
  376 F.3d 1254 (11th Cir. 2004) ............................................................. 13

*Pearson v. Dodd*,
  410 F.2d 701 (D.C. Cir. 1969) ............................................................... 22

*Person's Co., Ltd. v. Christman*,
  900 F.2d 1565 (Fed. Cir. 1990) ............................................................. 31

*Polaroid Corp. v. Polarad Elecs. Corp.*,
  287 F.2d 492 (2d Cir.1961).................................................................... 20

*Rosenthal v. Sonnenschein Nath & Rosenthal, LLP*,
  985 A.2d 443 (D.C. 2009) ..................................................................... 32

*Scott v. Harris*,
  550 U.S. 372 (2007)............................................................................. 4, 5

*Staggers v. Real Authentic Sound*,
  77 F. Supp. 2d 57 (D.D.C. 1999)........................................................ 6, 12

*Warren Freedenfeld Assocs. v. McTigue*,
  531 F.3d 38 (1st Cir. 2008).................................................................... 12

*Whitehead v. CBS/Viacom*,
  315 F. Supp. 2d 1 (D.D.C. 2004) ..................................................... 14, 15, 19, 20

## Statutes and Codes

15 U.S.C. § 1125.......................................................................... 1, 3, 15

15 U.S.C. § 1125(a) ........................................................................................... 16

15 U.S.C. § 1125(a)(1) ...................................................................................... 14

15 U.S.C. § 1127 .......................................................................................... 15, 19

17 U.S.C. § 101 ............................................................................................ 10, 12

17 U.S.C. § 201 ................................................................................................. 12

17 U.S.C. § 201(a) ........................................................................................... 6, 7

17 U.S.C. § 501 ............................................................................................... 3, 13

D.C. Code § 36-401 ........................................................................................... 28

D.C. Code § 36-401(1) ...................................................................................... 29

D.C. Code § 36-401(2) ...................................................................................... 29

**Rules and Regulations**

FED. R. CIV. P. 56(c) ........................................................................................... 4

**Other Authorities**

RESTATEMENT (SECOND) OF TORTS § 766B .......................................................... 27

Defendants Atlas Economic Research Foundation ("Atlas"), The Cato Institute ("Cato"), and Tom G. Palmer ("Palmer") (collectively referred to as "Defendants") hereby move pursuant to Federal Rule of Civil Procedure 56 for summary judgment on Counts I-IX of Plaintiff's Complaint for copyright infringement (Count I); unfair competition, false representation, and designation of origin (15 U.S.C. § 1125 *et seq*.) (Count II); trademark and trade name infringement, unfair competition and misappropriation (common law) (Count III); trespass (Count IV); unjust enrichment (Count V); tortious interference with business opportunity (Count VI); tortious interference with contract (Count VII); conversion (Count VIII); and misappropriation of trade secrets (Count IX). By this motion, Defendants also seek summary judgment on their Counterclaims. A decision on Counts I-IX of Plaintiff's Complaint necessarily resolves Defendants' Counterclaims as they involve the same operative facts.

## I.    INTRODUCTION

Defendants Atlas Economic Research Foundation ("Atlas"), The Cato Institute ("Cato"), and Tom G. Palmer ("Palmer") (collectively referred to as "Defendants") hereby submit this Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment. No genuine issues of material fact exist and Defendants are entitled to judgment as a matter of law on all nine counts of Plaintiff Ghaleb Mohammad Ishaq Hijazi's ("Mr. Hijazi" or "Plaintiff") Complaint. Accordingly, the Court should enter judgment on Defendants' behalf for all claims. In addition, Defendants are entitled to summary judgment on all of Defendants' Counterclaims. A proposed order is attached.

One of the central issues in this case is who is the proper owner of the trademark Misbah al Hurriyya. Misbah al Hurriyya is the Arabic word for Lamp of Liberty. It is undisputed that Cato registered the domain names www.misbahalhurriyya.org and www.lampofliberty.org on July 6, 2005. Defendants' Statement of Material Facts Related to Defendants' Motion for

Summary Judgment ("SOF") 12.  It is also undisputed that Cato thereafter set up a website of the www.misbahalhurriyya.org and www.lampofliberty.org domain names in an attempt to spread libertarian ideas to the Arabic world.  SOF 13-19.  This website went live on August 18, 2005 and is referred to hereinafter as the Misbah al Hurriyya website or the Lamp of Liberty website. SOF 19.

This website then became part of a larger Misbah al Hurriyya or Lamp of Liberty Project that engaged in the publication of books and articles related to Libertarian ideas, among other things.  What is at issue, therefore, in this case is who is the proper owner of the Misbah al Hurriyya project and website and who therefore owns the Misbah al Hurriyya trademark and the copyright to the design of the Misbah al Hurriyya website.  As the undisputed evidence will show, Cato, and now Atlas, own the Misbah al Hurriyya mark and also own the copyright to the design of the Misbah al Hurriyya website.  As a result, Mr. Hijazi has no basis to assert any of the claims in his Complaint and Defendants are entitled to Summary Judgment.

Mr. Hijazi is a Jordanian citizen who was employed by Cato from April 2006 to October 2008.  Ever since Mr. Hijazi was terminated, he has been on a vendetta against Cato and Palmer. This vendetta includes sending threatening letters to Cato's vendors in Jordan, filing lawsuits in Jordan claiming that he was an employee of Cato who was wrongly terminated (all while claiming in his case that he was an independent contractor), and bringing this lawsuit which requires the trier of fact to ignore the plain documentary evidence and instead rely upon Mr. Hijazi's and his childhood best friend Fadi Haddadin's ("Mr. Haddadin") unsupported testimony. This Court should not countenance such behavior and should admonish the Plaintiff for bringing and maintaining such baseless claims.  Accordingly, this Court should enter judgment for

Defendants on all of Mr. Hijazi's claims and should grant Defendants summary judgment on all of their claims.

## II.    PROCEDURAL HISTORY

On June 18, 2009, Mr. Hijazi filed an action for damages and injunctive relief against Defendants Atlas, Cato, and Palmer for unfair competition, false representation, and designation of origin (15 U.S.C. § 1125 *et seq.*) (Count II); trademark and trade name infringement, unfair competition and misappropriation (common law) (Count III); and trespass (Count IV).  In addition, Plaintiff alleges that Cato and Palmer committed tortious interference with business opportunity (Count VI), tortious interference with contract (Count VII), and conversion (Count VIII); and that Atlas and Cato have committed copyright infringement in violation of 17 U.S.C. § 501 (Count I), and unjust enrichment (Count V); and that Cato has misappropriated trade secrets (Count IX).

On July 29, 2009, all three defendants answered and counterclaimed, seeking a declaratory judgment that:  (1) Plaintiff has no rights in the Misbah al Hurriyya/Lamp of Liberty project ("Project") website, any mark incorporating the Misbah al Hurriyya name, or any other intellectual property related to the Project, including the media contact list; Atlas is the owner of, and Cato the prior owner and user of, the mark Misbah al Hurriyya and any other intellectual property related to the Project, including the media contact list; and (2) any copyright registration in the name of Plaintiff in the Project website and any trademark registration in the name of Plaintiff incorporating the Misbah al Hurriyya or related names is void or invalid and that Atlas is the rightful author and owner of any copyright in the Project website and the rightful owner of any trademark incorporating the Misbah al Hurriyya name.  (*See e.g.* DE 26).

On January 11, 2010, Defendants served an Amended Answer and Counterclaims that counterclaims for false and misleading designation of origin, trademark infringement, unfair

competition and tortuous interference with business relationship, in addition to the two

previously asserted counterclaims.  (See, e.g. DE 27 at 18-23).  Plaintiff denies all of

Defendants' counterclaims.

## III.   UNDISPUTED FACTS

A Statement of Material Facts Related to Defendants' Motion for Summary Judgment is

being filed concurrently herewith.

## IV.   SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after

adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial."  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986).  Summary judgment is appropriate when "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law."  *Celotex Corp.*, 477

U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial," consequently leaving no genuine

issue as to any material fact.  *Id.* at 323.

A fact is "material" if, under the applicable substantive law, it might affect the outcome

of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is "genuine" if

the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  *Id.*

By the same token, "[w]here the record taken as a whole could not lead a rational trier of fact to

find for the nonmoving party, there is no 'genuine issue for trial.'"  *Scott v. Harris*, 550 U.S. 372,

380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87

(1986)).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Id.* Although the party seeking summary judgment bears the initial burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" that demonstrate the absence of a genuine issue of material fact, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex Corp.*, 477 U.S. at 323. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

## V.   ARGUMENT

### A.   With No Valid Copyright and No Infringing Act by Defendants, Mr. Hijazi's Claim for Copyright Infringement (Count 1) Must Fail

Mr. Hijazi claims that he is the owner of the copyright to portions of the 2007 version of the Misbah al Hurriyya website, as reflected in two U.S. copyright registrations.[1]  Complaint (DE 1) (hereinafter referred to as "Compl.") at ¶ 29; Plaintiff's Objections and Responses to Defendant the Cato Institute's First Set of Interrogatories ("Hijazi Cato Rog. Response") at 3. Mr. Hijazi's U.S. copyright registration claims "text, translation, photograph(s), compilation, editing, artwork," which Mr. Hijazi describes as "the arrangement of the entire website." Plaintiff's Supplemental Responses to Defendant Atlas Economic Research Foundation's First Set of Interrogatories ("Hijazi Atlas Supp. Rog. Response") at 1.  Mr. Hijazi also claims, without

---

[1]  Mr. Hijazi asserts two copyright registrations but in actuality there is only one.  The second registration is simply a name change for the first copyright registration.

support, that he owns a copyright on the Misbah al Hurriyya logo consisting of the Lamp Design and Arabic text for Misbah al Hurriyya.  Mr. Hijazi accuses Defendants of infringing his copyrights by reproducing his works in copies and preparing derivative works based upon Mr. Hijazi's copyrighted works.  Compl. at ¶ 30.  Mr. Hijazi seeks damages for Defendants' alleged infringement of his alleged U.S. and Jordanian copyrights.

To prevail on his copyright claim, Mr. Hijazi must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).  Because Mr. Hijazi cannot prove either of these elements, his copyright infringement claim must fail and summary judgment be entered on behalf of Defendants Cato and Atlas.

**1.     The Copyrights that Mr. Hijazi Claims to Own Belong to Defendants**

To show ownership of a valid copyright, "a plaintiff must prove that the work as a whole is original and that the plaintiff complied with applicable statutory formalities."  *DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 81 (D.D.C. 2007) (quoting *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807 (1st Cir. 1995)).  Copyright ownership in a work "vests initially in the author or authors of the work."  17 U.S.C. § 201(a); *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989); *Staggers v. Real Authentic Sound*, 77 F. Supp. 2d 57, 62 (D.D.C. 1999). The author is generally the person who actually creates the work by translating an idea into a fixed, tangible expression entitled to copyright protection.  *Reid*, 490 U.S. at 737; *Staggers*, 77 F. Supp. 2d at 62.  As shown below, however, Mr. Hijazi is not the "author" of the works and so has no valid copyright ownership.

### a.     The Lamp of Liberty Logo

In his deposition, Mr. Hijazi claimed copyright ownership on the Lamp of Liberty logo, which consists of the Lamp and the Arabic calligraphy that spells out Misbah al Hurriyya.[2]  SOF 29.  Mr. Hijazi is not the author of the Lamp of Liberty logo, however.  SOF 30.

The lamp design portion of the logo was created by Cato employee Brian Kieffer in the regular course of his employment.  SOF 31.  The Arabic calligraphy used as part of the logo under the lamp was originally created by a graphic designer in Amman, Jordan.  SOF 32.  Mr. Haddadin's sister commissioned the work from the graphic designer and she forwarded the calligraphy to Mr. Fadi Haddadin, who was then a paid Cato independent contractor, on July 8, 2005.  SOF 33.  Mr. Haddadin then provided the calligraphy to Cato employees Jon Meyers, Tom Palmer, Jude Blanchette and Brian Kieffer.  SOF 34.  Mr. Haddadin never told anyone at Cato that Cato did not have the right to use the calligraphy.  SOF 34.

Mr. Hijazi never had any contact with the designer of the calligraphy and prior to filing suit had never seen the email forwarding the designer's work.  SOF 35.  Mr. Hijazi has admitted that he does not have any written agreements with the graphic designer.  SOF 32.  Likewise, Mr. Hijazi does not have any written agreements with Mr. Haddadin regarding the ownership of copyrights.  SOF 36.  Mr. Hijazi also contends that Mr. Haddadin does not own any copyrights related to the Misbah al Hurriyya website.  SOF 37.  It is clear, therefore, that Mr. Hijazi has no protectable copyright in the lamp logo and this portion of his copyright claim should be dismissed.  17 U.S.C. § 201(a); *Reid*, 490 U.S. at 737.

---

[2]  The Lamp of Liberty logo was undisputedly created in 2005, well before the first publication date claimed in Mr. Hijazi's copyright registrations.  As such, the logo cannot be claimed to be part of the registration.  Even assuming Mr. Hijazi owned the copyright to the logo, he cannot assert infringement over the logo because it is an unregistered work over which Federal Courts have no jurisdiction.

### b. The 2007 Website Design

Mr. Hijazi also claims copyright ownership in the 2007 version of the Misbah al Hurriyya website, which was developed with Media Plus, a third party web design company.[3]  SOF 40. During his deposition, however, Mr. Hijazi was unable to identify in what portions of the web pages that make up his copyright registration he allegedly owned the copyrights.  SOF 64. Instead, Mr. Hijazi indicated he would have to rely upon an expert to assist him in identifying the copyrighted design elements.  *Id.*  Mr. Hijazi has not timely designated any such expert.  SOF 64. Mr. Hijazi has admitted that other third parties created portions of the web design for which he now claims copyright and that he does not have any written agreements with those third parties related to the ownership of the elements of the design they created.  SOF 63.

In addition, the written agreements governing the creation of the web design in 2007 clearly indicate that Cato is the owner of the design.  The design of the website was undertaken by Media Plus, a Jordanian based web design company, pursuant to a June 2, 2007 contract. SOF 41.  The contract defines the contracting parties as "The First Party: Misbah al Hurriyya Project/Cato Institute, Represented by Mr. Ghaleb Hijazi, Email: ghijazi@cato.org" and "The Second Party: Media Plus, …."  SOF 8.  The contract goes on to state that "The First Party is the owner of the design."  SOF 44.  Pursuant to this contract, therefore, it is Cato, not Mr. Hijazi, who owns the copyright to the design.

Mr. Hijazi, without support, claims that the contract was really between him and Media Plus and that Cato was not a party to the contract.[4]  Such a statement, however, contradicts the

---

[3]  The original website design went live in August 2005.  SOF 19.  An updated version was released in January 2006.  SOF 22.

[4]  Mr. Hijazi makes this argument because, unbeknownst to Cato, Mr. Hijazi applied to register the name Misbah al Hurriyya as his own personal trade name in Jordan.  He did this after Palmer orally requested that Mr. Hijazi register the trade name in Cato's name.  SOF 73.  When Palmer followed up on this request in an email on May 21, 2007, Mr. Haddadin replied, with a cc to Mr. Hijazi, that the trademark was registered.  SOF 74 and 75.  Mr.

plain language of the contract.  Mr. Hijazi argues, again without support, that because Cato's

name is listed after the "/" that it is understood that they are not a contracting party, only a

collaborator.  SOF 61.  Such a conclusion has no support under Jordanian law and indeed Mr.

Hijazi has offered none.  SOF 61, 62.  Such a statement is also directly contradicted by Media

Plus, who always believed they were contracting with Cato, not Mr. Hijazi personally.  SOF 45

and 46, 47.  The statement is also contradicted by contemporary communications from Mr.

Hijazi, and Mr. Haddadin wherein they repeatedly referred to the work Media Plus was doing as

being for Cato.  SOF 49 and 50.

In addition, Cato, not Mr. Hijazi, paid for all of Media Plus's work on the website.  SOF

51.  Mr. Hijazi has also admitted that all of the alleged design work he did on the website was

done in collaboration with Mr. Haddadin, a full-time Cato employee.  SOF 52.  The websites

also listed Cato as the owner of the copyrights.  SOF 56.

Taken together, this evidence should lead the Court to conclude that Mr. Hijazi's account

of his contribution to the website is not credible.  "When opposing parties tell two different

stories, one of which is blatantly contradicted by the record, so that no reasonable jury could

believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for

summary judgment."  *Celotex Corp.*, 477 U.S. at 323.  On the contrary, the contemporary

documentary evidence clearly establishes that Cato contracted with Media Plus for the redesign

and that, pursuant to the contract, Cato is the owner of the copyright in the design, not Mr.

Hijazi.

---

Haddadin and Mr. Hijazi intentionally mislead Palmer and Cato into believing that the mark was registered in Cato's name when in fact it was registered in Mr. Hijazi's name.  This intentional misrepresentation was not discovered until after Mr. Hijazi was terminated.  SOF 76.  Cato and Atlas have since taken steps to dispute Mr. Hijazi's ownership of the mark.  SOF 77.

### c.      Original Work by Mr. Hijazi, if Any Exists, is Work Made for Hire for the Benefit of Cato

Even if Mr. Hijazi created any protectable design elements that could give rise to copyright protection, the ownership of this copyright vests in Cato, as Mr. Hijazi's design work would have been a work made for hire.  "A 'work made for hire' is (1) a work prepared by an employee within the scope of his or her employment . . . ."  17 U.S.C. § 101.  The classification of a hired person as an "employee" is made by reference to agency law.  *Reid*, 490 U.S. at 743. "The work for hire concept isn't limited to formal employment because a functionally identical relationship can be created by skillful drafting of contracts that purport to treat the (de facto) employee as an independent contractor."  *Gaiman v. McFarlane*, 360 F.3d 644, 650 (7th Cir. 2004).  Thus, even though Cato called Mr. Hijazi an "independent contractor," the analysis of common law agency principles below leads to the conclusion that Mr. Hijazi was an employee within the meaning of the work made for hire doctrine.

Determining whether a hired person is an "employee" requires examining "the hiring party's right to control the manner and means by which the product is accomplished."  *Reid*, 490 U.S. at 751; *Mayeske v. Int'l Ass'n of Fire Fighters*, 905 F.2d 1548 (D.C. Cir. 1990).  Among other factors relevant to this inquiry are the following:

> . . . [T]he skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.  No one of these factors is determinative.

*Reid*, 490 U.S. at 751-52; *Mayeske*, 905 F.2d 1548.  "[T]he hiring party's right to control the manner and means by which the product is accomplished deserves separate analysis, but is not dispositive." *Mayeske*, 905 F.2d at 1554.

At the suggestion of Mr. Haddadin, Mr. Hijazi was hired as an independent contractor of Cato in April 2006.  SOF 25.  Mr. Hijazi was hired to be the Business, Marketing, and PR Manager of Misbah al Hurriyya.org, The Cato Institute.  SOF 25.  Mr. Hijazi's business card listed him in English and in Arabic as the Business, Marketing, and PR Manager of Misbah al Hurriyya.org, The Cato Institute, and listed his email address as ghijazi@cato.org.  SOF 25.  This position was not limited in duration to the time it would take to complete a project; instead, it could have continued indefinitely.

Cato paid Mr. Hijazi a monthly stipend during the time of Mr. Hijazi's employment relationship with Cato.  SOF 28.  Cato also reimbursed Mr. Hijazi for all of his work-related expenses, including telephone expenses, office supplies, travel, and computer related expenses.  SOF 38.  In addition, all expenses related to the publication and/or purchase of books, translation services, advertisements and other projects related to the Misbah al Hurriyya website and Lamp of Liberty project were paid for by Cato, either directly to the vendor or via payment or reimbursement to Mr. Hijazi.  SOF 39.

During the course of his employment as an independent contractor for Cato, Dr. Palmer kept in regular contact with Mr. Hijazi, usually having weekly contact with him to supervise his work.  SOF 26.  Dr. Palmer oversaw and supervised Mr. Hijazi's work and where appropriate, suggested various projects for him to pursue.  SOF 27.

All of these factors combined lead to the conclusion that Mr. Hijazi was an "employee" of Cato under the work made for hire doctrine. Accordingly, the copyrights to any original work authored by Mr. Hijazi belong to Cato.

**d.      Even if Mr. Hijazi's Contribution Was Not "Work Made for Hire," the Greatest Interest Mr. Hijazi Could Have in Any Copyrights Would Be as a Co-owner of a Joint Work.**

"A 'joint work' is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101; *Staggers*, 77 F. Supp. 2d at 62. "The authors of a joint work are co-owners of copyright in the work." 17 U.S.C. § 201; *Staggers*, 77 F. Supp. 2d at 62. "Each co-owner of a copyright is akin to a tenant in common and each owns a share of an undivided whole. *Warren Freedenfeld Assocs. v. McTigue*, 531 F.3d 38, 48 (1st Cir. 2008). Accordingly, "no copyright infringement action lies as between joint owners of the same copyright." *Id.*

Mr. Hijazi has asserted that all of his work in allegedly creating the design of the website was done together, and in cooperation with, Mr. Haddadin, who was then a full time Cato employee. SOF 52. Under the work for hire doctrine discussed above, any rights to the design created by Mr. Haddadin vest with Cato. Mr. Hijazi, therefore, created a joint work with Cato, and so as a matter of law, Cato cannot infringe any copyrights in the joint work.

**2.      Defendants Did Not Engage in Any Infringing Act**

To prove the copying element of copyright infringement, the plaintiff must show that "(1) the defendant copied the plaintiff's work as a factual matter and (2) that 'the copying of copyrighted material was so extensive that it rendered the offending and copyrighted works substantially similar.'" *DSMC*, 479 F. Supp. 2d at 82 (quoting *Lotus*, 49 F.3d at 813).

Assuming for the sake of argument that Mr. Hijazi does own a valid copyright in some portion of the website, he has not provided any evidence to permit a jury to conclude that

Defendants violated any of the exclusive rights conferred in the Copyright Act.  Mr. Hijazi

claims that Defendants Atlas and Cato violated 17 U.S.C. § 501 by "(a) reproducing Plaintiff's

copyrighted works in copies; and (b) preparing derivative works based upon Plaintiff's

copyrighted work without authorization from Plaintiff."  Hijazi Cato Rog. Response at 3.  Mr.

Hijazi subsequently explained his allegations as follows:

> Plaintiff's claims of copyright infringement are simple, and this may explain why at first glance they appear conclusory.  The Misbah al Hurriyya Project, consisting of Mr. Hijazi and Mr. Haddadin, provided the original and creative input necessary to create the website, as substantiated above.  This occurred while neither was employed by any of the Defendants.  Defendants then cut Plaintiff off from his website and used it for their own benefit, which they continue to do to date.  Plaintiff's copyrighted expression, in the form of the website, was taken from him by the Defendants.  A simple search on the Internet reveals that Defendants continue to use and enjoy the benefit of Plaintiff's copyrighted creation.

Plaintiff's Supplemental Responses to Defendant The Cato Institute's First Set of Interrogatories

("Hijazi Cato Supp. Rog. Response") at 2.  Putting aside the factual misstatements in this

allegation, such as claiming that the design was created by Mr. Haddadin while he was not

employed by Cato, such a claim is not cognizable under U.S. law.

United States copyright law has no extraterritorial effect, so it does not confer any rights

to obtain relief for acts of infringement that occur entirely outside the United States.  *Litecubes,

LLC v. Northern Light Prods., Inc.*, 523 F.3d 1353, 1365 (Fed. Cir. 2008); *Palmer v. Braun*, 376

F.3d 1254, 1258 (11th Cir. 2004).  Assuming for the sake of argument that Mr. Hijazi owns a

valid copyright in portions of the Misbah al Hurriyya website and that Defendants are engaged in

copying or preparing derivative works without Mr. Hijazi's permission.  Mr. Hijazi cannot

prevail on his copyright infringement claim because the small amount of evidence he produced

suggests that if there were unauthorized copying or derivative works, those acts were completed

in Jordan, not the U.S.  *See* SOF 135 – 136.

As a result of the above, it is clear that Mr. Hijazi has failed to establish that he is an owner of a valid U.S. copyright or that Defendants engaged in any infringing acts that violated his copyrights.  Therefore, summary judgment should be entered on Defendants' behalf on Count I of Mr. Hijazi's complaint.

### B.   Defendants, Not Hijazi, Own the Misbah al Hurriyya Trademark (Count 2 – Unfair Competition, False Representation and Designation of Origin – Federal; and Count 3 –Trademark, Trade Name Infringement, Unfair Competition and Misappropriation – Common Law)

Like his copyright claims, Mr. Hijazi's claims of trademark infringement, unfair competition, false designation of origin and misappropriation fail because he does not have any cognizable rights in the Misbah al Hurriyya mark.  Mr. Hijazi's claims are based upon the premise that he was the true owner of the Misbah al Hurriyya project and that Defendants' adoption and use of the Misbah al Hurriyya name and website after his termination is likely to confound consumers.  Hijazi Cato Rog. Response at 3-4; Plaintiff's Objections and Responses to Defendant Atlas Economic Research Foundation's First Set of Interrogatories ("Hijazi Atlas Rog. Response") at 3-4; Plaintiff's Objections and Responses to Defendant Tom G. Palmer's First Set of Interrogatories ("Hijazi Palmer Rog. Response") at 3-4.  Mr. Hijazi seeks damages for Defendants alleged infringement of his purported U.S. common law trademark rights as well as his alleged Jordanian trademark rights.  Mr. Hijazi has no rights in the Misbah al Hurriyya trademark in the United States, Jordan, or anywhere else in the world, however.

The Lanham Act imposes liability on "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, symbol, or device . . . or any false designation of origin, which . . . is likely to cause confusion, or to cause mistake . . . as to the origin of his goods . . . or misrepresents the nature" of his goods.  15 U.S.C. § 1125(a)(1); *Whitehead v. CBS/Viacom*, 315 F. Supp. 2d 1, 12-13 (D.D.C. 2004).  To prevail on a Lanham

Act claim, a plaintiff must prove (1) that he owns a protected trademark and (2) that a consumer

is likely to be confused about the origin or source of the infringing product.  15 U.S.C. § 1125;

*Whitehead*, 315 F. Supp. 2d at 13.  Mr. Hijazi's claims fail on both counts.

### 1.        Plaintiff Does Not Own a Valid Mark Entitled to Protection

The threshold question in a Lanham Act case is whether the plaintiff has a valid mark

entitled to protection.  *Whitehead*, 315 F. Supp. 2d at 13; *Federation Internationale De Football*

*Assoc. v. Nike, Inc.*, 285 F. Supp. 2d 64, 68 (D.D.C. 2003).  Protected trademarks include "any

word, name, symbol, or device, or any combination thereof . . . used by a person . . . to identify

and distinguish his or her goods, including a unique product, from those manufactured or sold by

others and to indicate the source of the goods, even if that source is unknown."  15 U.S.C. §

1127; *Whitehead*, 315 F. Supp. 2d at 13.

Trademark rights are acquired through their use in commerce.  15 U.S.C. §§ 1125 and

1127; *Lucasfilm Ltd., v. High Frontier, et al.*, 622 F. Supp. 931, 934 (D.D.C. 1985).  Mr. Hijazi

has admitted that he has not used the Misbah al Hurriyya mark in commerce as required by the

Lanham Act.  As a result, he has no rights in the mark.  Even if he did, Mr. Hijazi has also failed

to establish any likelihood of confusion.  We address each issue in turn.

### a.        Mr. Hijazi has Never Used the Mark in Commerce.

Mr. Hijazi has admitted that he has never offered any goods or services in the United

States using the Misbah al Hurriyya mark.  SOF 84.  He has also stated that he has never done

any advertising for his Misbah al Hurriyya project in the United States.  SOF 85.  He also

admitted that he never used the Misbah al Hurriyya name or logo in the United States in

connection with his purported Misbah al Hurriyya project.  SOF 83; 87.  Lastly, Mr. Hijazi could

not point to any products, books, articles, or anything else that he shipped to the U.S. from his

purported Misbah al Hurriyya project.  SOF 86.  Indeed, Mr. Hijazi has not pointed to any use of

the mark separate and apart from Cato's use of the mark.  As a result, Mr. Hijazi is unable to

establish that he has used the Misbah al Hurriyya mark in commerce.  Absent such a showing,

Mr. Hijazi has no trademark rights in the United States in the Misbah al Hurriyya mark and so

cannot maintain a claim under 15 U.S.C. § 1125(a).

Realizing this predicament, Mr. Hijazi attempts to argue that he nevertheless has valid

trademark rights because he purportedly was the one who came up with the name Misbah al

Hurriyya.  Hijazi Atlas Rog. Response No. 10 (asserting that "[i]t was Hijazi who proposed the

name Misbah Al Hurriyya back in 2005 to Haddadin, who, in turn, sent it on to Cato.").  Even

assuming that he came up with the name, however, which he did not, trademark rights are not

vested simply by coming up with an idea for a name.  *Hydro-Dynamics, Inc. v. George Putnam*

*& Co. Inc.*, 811 F.2d 1470, 1473 (Fed. Cir. 1987) (quoting that "Mere invention, creation, or

discussion of a trademark does not create priority rights.") (citations omitted); *Blue Bell, Inc. v.*

*Farah Manufacturing, Co.*, 508 F.2d 1260, 1265 (5th Cir. 1975) (stating that conception of the

mark does not establish trademark rights); SOF 11 (establishing that Dr. Palmer came up with

the name).  One must use the mark in commerce for trademark rights to vest, something Mr.

Hijazi did not do.

Cato, on the other hand, through the work of Dr. Palmer, took significant steps to begin

using the Misbah al Hurriyya mark in commerce.  On July 6, 2005, shortly after Dr. Palmer came

up with the Lamp of Liberty/Misbah al Hurriyya name, Cato registered the

www.misbahalhurriyya.org domain name, as well as the lampofliberty.org domain name.  SOF

11; SOF12.  Cato then began designing a website accessible at those domain names that was

branded with the Misbah al Hurriyya name and logo.  SOF 13; SOF 15; SOF 16; SOF 17; SOF

18.  The initial website went live on August 18, 2005 and Cato immediately began advertising

the Misbah al Hurriyya website.  SOF 19.  Shortly thereafter, Cato began offering educational

materials through the Misbah al Hurriyya website and sold Misbah al Hurriyya branded products

including an Arabic language version of the U.S. Constitution and Bill of Rights.  SOF 91.

In response to an interrogatory asking that Mr. Hijazi identify when he first used the

mark in commerce in the U.S., Mr. Hijazi asserts that "[a]s soon as the Lamp of Liberty Website

went operational, it was used in the United States since it was on the World Wide Web."

Plaintiff's Supplemental Responses to Defendant Atlas Economic Research Foundation's Second

Set of Interrogatories ("Hijazi Atlas Supp. 2nd Rog. Response") No. 15.  Unfortunately for Mr.

Hijazi, Cato launched the Lamp of Liberty/Misbah al Hurriyya website on August 18, 2005,

approximately 8 months before Mr. Hijazi was even hired as an independent contractor of Cato.

SOF 19; SOF 25.  Nothing on the website identified Mr. Hijazi as the source of the goods or

services offered on the Misbah al Hurriyya website.  SOF 65; SOF 66.  To the contrary, the

copyright notice on the website identified the owner of the copyrighted material on the website

as "Lamp of Liberty – Cato Institute."  SOF 21; SOF 56.

To make matters worse for Mr. Hijazi, after he was hired as a Cato independent

contractor, he repeatedly informed consumers that Misbah al Hurriyya was a trademark of Cato.

Mr. Hijazi sent dozens of emails to consumers that stated, "Misbah al Hurriyya is a non-profit

and non-partisan initiative of the Cato Institute.  It strives to promote the ideas of liberty, justice,

and peaceful cooperation in the Middle East through a website, syndicated newspaper articles,

book publications, lectures, and seminars."  SOF 67.  He and Mr. Haddadin also repeatedly

referred to Misbah Al Hurriyya as the Arabic arm of Cato and the www.misbahalhurriyya.org

web site as Cato's Arabic website.  SOF 68 and 69.  Mr. Hijazi has also admitted that the

purpose of the Misbah al Hurriyya project was to promote Cato.  SOF 71; SOF 97 (Mr. Hijazi

believed that Mr. Hijazi was using marketing techniques to get people to begin equating the term
Misbah al Hurriyya with Cato).  In short, all of Mr. Hijazi's, and Cato's, actions would lead
consumers to believe that the Misbah al Hurriyya mark would identify Cato as the source or
origin of the goods and services offered under the mark.

After Defendants pointed out the fallacy of Mr. Hijazi's trademark claims since he was
not involved in the launch of the website and that he failed to allege use in commerce in the
United States, Mr. Hijazi served a supplemental interrogatory response in attempt to identify his
date of first use.  Mr. Hijazi's supplemental response stated "Defendants claim in their letter by
counsel that the website belonged to Cato begs the question.  Plaintiff is claiming an interest in
the website and associated intellectual property and therefore Plaintiff's date of first use in
commerce in the U.S. is the date the website went public and was viewable by Americans via the
Internet."  Hijazi Atlas Supp. 2nd Rog. Response No. 15.  Mr. Hijazi does not assert in his
interrogatory response, how he claims an interest in the website and associated intellectual
property, and this fact still remains a mystery.

Mr. Hijazi was similarly unable to identify his use of the Misbah al Hurriyya mark in
commerce in the United States or identify the products or services offered under the Mark.
Plaintiff's Responses to Defendant Atlas Economic Research Foundation's Second Set of
Interrogatories ("Hijazi Atlas 2nd Rog. Response") No. 17 and 21; Hijazi Atlas Supp. 2nd Rog.
Response No. 17 and 21.  Once again, the only use that Mr. Hijazi could muster was through the
use of the mark via the Internet on Cato's Lamp of Liberty website.  *Id.*  When asked where he
advertised and promoted goods and services using the Lamp of Liberty or Misbah al Hurriyya
mark in the United States and what his sales of goods were, Mr. Hijazi attempted to rely upon
Federal Rule of Civil Procedure 33(d) for his response.  Hijazi Atlas Supp. 2nd Rog. Response

Nos. 18 and 19.  Mr. Hijazi's original and substantive responses fail to actually disclose the identity of any such documents, however, thus equating to no response at all.

Mr. Hijazi's bald allegations of ownership and use cannot stand.  Instead, based upon his admissions that he has never used the Misbah al Hurriyya mark in commerce in the United States and his inability to make a colorable argument about how he allegedly has an interest in Cato's website, it is clear that Mr. Hijazi has no trademark rights in the Misbah al Hurriyya name and Counts 2 and 3 of his Complaint should be dismissed.

### b.   Hijazi's Alleged Use of the Misbah al Hurriyya Mark Does Not Designate a Source of Origin.

The main purpose of a trademark is to designate the source or origin of a party's goods and services.  *Whitehead*, 315 F. Supp. 2d at 13.  If a word or phrase fails to identify or distinguish the source of goods, then it is not protectable.  *Id.*; 15 U.S.C. § 1127.  The Misbah al Hurriyya mark serves this function, but it serves the function for Cato, not Hijazi.  At the time the Misbah al Hurriyya mark was first used in commerce by Cato, Mr. Hijazi was not involved in the project.  SOF 19, 22, 25.  In August of 2005, Mr. Hijazi was residing in Jordan and was not working or volunteering for Cato in any capacity, was not known to Dr. Palmer, the Cato employee who was running the Misbah al Hurriyya project, and can point to no connection between himself and the use in commerce of the Misbah al Hurriyya name.  SOF 23.  Instead, the Misbah al Hurriyya name was used to designate Cato as the source of the ideas and information available on Cato's website.

For his part, Mr. Hijazi understood that the mark designated Cato as the source of origin.  On December 24, 2005, Mr. Hijazi wrote to Mr. Haddadin who was then the editor of Cato's Misbah al Hurriyya website: "Dear Mr. Fadi, Kindly find attached a new article for Dr. Nathem Shammary, hope it would be comfortable to be published in your website Lamp of Liberty,

thanks for your time waiting for your response. Best Regards, Ghaleb Hijazi." SOF 24. If Mr.

Hijazi believed that he was the owner of the Misbah al Hurriyya mark in 2005, there would have

been no reason to send such an email. Since the Misbah al Hurriyya mark does not designate

Mr. Hijazi as the source or origin, it is not protectable.

### 2.      Plaintiff Cannot Show Likelihood of Confusion

Even assuming that Mr. Hijazi could establish that he had some rights to the Misbah al

Hurriyya name, his claim still fails because he, unlike Cato, is unable to establish a likelihood of

confusion. In order to establish a likelihood of confusion, Mr. Hijazi must establish that "an

appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply

confused, as to the source of the goods in question." *Whitehead*, 315 F. Supp. 2d at 13.

Likelihood of consumer confusion is gauged against eight factors set forth in *Polaroid Corp. v.*

*Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.1961) (cited with approval in *Basile, S.p.A. v.*

*Basile*, 899 F.2d 35, 37 (D.C. Cir. 1990)); *Whitehead*, 315 F. Supp. 2d at 13-14; *Federation*

*Internationale*, 285 F.Supp.2d at 72. Under *Polaroid Corp.*, likelihood of consumer confusion is

measured by "(1) the strength of the plaintiff's mark; (2) the degree of similarity between the

plaintiff's and defendant's marks; (3) the proximity of the products being sold; (4) the likelihood

that the plaintiff will 'bridge the gap' between the products being sold; (5) evidence of actual

confusion; (6) defendant's good faith in using the mark; (7) the quality of defendant's products;

and (8) the sophistication of the relevant consumer market." *Whitehead*, 315 F. Supp. 2d at 14.

Assuming that Mr. Hijazi had a valid mark, he would be unable to establish likelihood of

confusion because the strength of his mark is very weak. Mr. Hijazi has proffered no evidence to

support the strength of his mark and upon looking at his personal use of the mark, even Mr.

Hijazi himself believes his mark is weak. Mr. Hijazi repeatedly claims in his pleadings and

discovery responses that he was the Misbah al Hurriyya project. Yet a review of his curriculum

vitae and "Linked In" page reveal only that Mr. Hijazi was employed as an independent contractor for Cato.  SOF 92 and 93.  Neither document reveals that Mr. Hijazi was involved in a Misbah al Hurriyya project.  If he cannot even equate himself with the Misbah al Hurriyya name, how could he expect it to act as a source of origin for him?  To the extent he has any rights in the mark, therefore, they are very weak.

Once again assuming that Mr. Hijazi has rights in a Misbah al Hurriyya mark, Mr. Hijazi cannot establish that the marks currently in use are substantiality similar.  The marks are not substantially similar because after Mr. Hijazi was terminated and began sending threatening letters to Cato's vendors, it was determined that the Misbah al Hurriyya project should be rebranded.  SOF 134.  The Misbah al Hurriyya Project was thus rebranded to the Minbar al Hurriyya project.  SOF 134 and 135.  Misbah refers to a lamp and Minbar refers to a stage or pulpit.  While both marks use the word liberty, this does not automatically make them confusingly similar.  Rather, Mr. Hijazi has failed to proffer any evidence of similarity.

Mr. Hijazi also cannot show that there is proximity between the goods sold under the two marks and there is little or no likelihood that Mr. Hijazi will bridge the gap as Mr. Hijazi has not offered any goods or services under the mark since he was terminated.  SOF 123.  Mr. Hijazi has also conceded that there is no evidence of actual confusion.  Hijazi Atlas 2nd Rog. Response at 16.  As noted above, Cato, and now Atlas adopted the mark prior to ever hearing of Mr. Hijazi and independently developed the name and have since built a strong brand, offering high quality books and educational material.  It is clear, therefore, that Mr. Hijazi is unable to establish any likelihood of confusion between his purported mark and Defendants' Misbah al Hurriyya or Minbar al Hurriyya marks.

As a result of all of these failings it is clear that Mr. Hijazi can not establish a claim for trademark infringement, unfair competition or likelihood of confusion.  Counts 2 and 3 of Mr. Hijazi's complaint should therefore be dismissed.

> **C.**     **The Common Law Torts of Trespass (Count 4) and Conversion (Count 8) Do Not Protect Plaintiff's Purported Property Interests**

Conversion occurs when a defendant unlawfully exercises "ownership, dominion or control over the personal property of another in denial or repudiation of his rights thereto." *Kaempe v. Myers*, 367 F.3d 958, 964 (D.C. Cir. 2004).  If the wrongful interference with the personal property of another "falls short of the complete or very substantial deprivation of possessory rights in the property, the tort committed is not conversion, but the lesser wrong of trespass to chattels." *Id.*  Liability for trespass to chattels may be found if a defendant interferes with the plaintiff's use of his property, but does not deprive the plaintiff of such a significant possessory interest to rise to the level of conversion.  *See Pearson v. Dodd*, 410 F.2d 701, 707 (D.C. Cir. 1969).  A judgment for conversion can be obtained even if plaintiff's damages are merely nominal, but liability for trespass to chattels can be found only on a showing of actual damage to the property interfered with.  *Id.*

Plaintiff alleges that Defendants blocked Plaintiff's access to the Misbah Al Hurriyya website, thereby converting Plaintiff's property (the website) to Defendants.  Compl. ¶ 76.  To support his claim for trespass, Plaintiff alleges that Defendants "entered upon Lamp of Liberty's website and modified the content [sic] website without authorization, thereby disrupting Plaintiff's possession of the content of the website."  Compl. ¶ 53.

Mr. Hijazi never had any ownership rights in the Misbah Al Hurriyya website, so there were no rights with which Defendants could have interfered.  Atlas has owned the domain names, www.lampofliberty.org and www.misbahalhurriyya.org, since January 1, 2009.  SOF

133.   Cato previously owned the domain names from the day they were registered by the Cato

Institute, July 6, 2005, until they were transferred to Atlas.  SOF 12, 133.  The Lamp of Liberty

project had been conceived by Dr. Palmer in 2004 as an Arabic language website, with a brand

name, to offer libertarian ideas to readers of Arabic.  SOF 5.  After registering the domain names

on July 6, 2005, Dr. Palmer then directed the design of a website to convey libertarian ideas to

Arabic language readers at the www.misbahalhurriyya.org and www.lampofliberty.org domain

names, both of which resolved to the same website.  SOF 13.  The history of Cato's and then

Atlas's ownership of this website is so well documented that Mr. Hijazi cannot possibly offer

credible evidence of his ownership of the same website.  Without some proof of ownership of the

personal property that is the subject of the alleged trespass or conversion, Mr. Hijazi cannot be

granted any of the relief he seeks on these claims.

Even if Plaintiff did have a personal property interest in the website, such a property

interest is not protected by the torts of conversion and trespass in this jurisdiction.  Under D.C.

law, conversion extends to intangible rights only if those rights are identified by a tangible

document that is converted.  *Ficken v. AMR Corp.*, 578 F. Supp. 2d 134, 143 (D.D.C. 2008)

(frequent flier miles are a credit with the airline, which is an intangible right that cannot be the

subject of a conversion claim); *accord 3D Global Solutions, Inc. v. MVM, Inc.*, 552 F. Supp. 2d 1

(D.D.C. 2008) ("Neither District of Columbia nor Virginia law recognizes a cause of action for

conversion of intangible property."); *cf. Kaempe*, 367 F.3d at 963-64 (observing that it was

unclear whether D.C. law would permit an action for conversion of patent rights because,

although other jurisdictions recognize conversion of intangible property, there is no precedent for

doing so in D.C.).  "Thus a plaintiff may bring a suit for conversion of a promissory note, a

check, a bank book, or an insurance policy . . . but not for conversion of a debt, the good will of a

business or an idea." *Ficken*, 578 F. Supp. 2d at 143.  The intangible personal property that

Plaintiff claims to own in the Misbah al Hurriyya website is not a property interest that the torts

of trespass and conversion will protect.  Accordingly, Mr. Hijazi cannot prevail on his claims for

trespass or conversion.

### D.     Mr. Hijazi Cannot Prove Unjust Enrichment (Count 5):  Cato Was Not Enriched and Mr. Hijazi Was Fully Compensated for His Work

Unjust enrichment occurs when a person retains a benefit, usually money, which in

justice and equity belongs to another.  *Jordan Keys & Jessamy, LLP v. St. Paul Fire and Marine*

*Ins. Co.*, 870 A.2d 58, 63 (D.C. 2005).  Deriving from the common law concept of quasi-

contract, unjust enrichment permits recovery by a contractual remedy in cases where there is no

contract, but "circumstances are such that justice warrants a recovery as though there had been a

promise."  *Id.*  Consequently, there is no need to resort to quasi-contract where there is an actual

contract, either express or implied-in-fact, between the party seeking recovery on the basis of

unjust enrichment and the party alleged to have been unjustly enriched.  *See id.*  "One who has

entered into a valid contract cannot be heard to complain that the contract is unjust, or that it

unjustly enriches the party with whom he or she has reached agreement."  *Id.*

Mr. Hijazi complains that "Defendants continue to benefit from [his] time, money, and

resources expended to create the misbahalhurriyya.org website . . . without any attribution or

compensation to Plaintiff for the value of his work."  Compl. ¶ 58.  To the contrary, Cato paid

Mr. Hijazi monthly wages for his services.  SOF 28.  Cato also reimbursed Mr. Hijazi's

expenses.  SOF 38.  Mr. Hijazi's services and Cato's monthly payments for those services were

the product of an unwritten agreement between Mr. Hijazi and Cato that continued in effect from

month-to-month from April 2006 to October 2008.  SOF 25, 79.  Mr. Hijazi cannot now claim

that Cato has been unjustly enriched by the services that he was already paid an agreed-upon wage to perform.

Plaintiff has produced no evidence that Defendants were "enriched" from Mr. Hijazi's services, let alone unjustly enriched.  Plaintiff has the burden to prove that Defendants were actually enriched, and with no evidence to support this crucial element of his claim, no reasonable jury could find for Plaintiff on an unjust enrichment claim.

### E.    Cato and Palmer Did Not Interfere With Plaintiff's Contracts (Count 7) and Could Not Interfere With Contracts to Which Cato Was a Named Party

To establish a prima facie case of tortious interference with contractual or other business relationships, Plaintiff must prove the following:  (1) the existence of a contract between the Plaintiff and a third party; (2) Defendant knew about the contract; (3) Defendant acted intentionally to interfere with the performance of the contract in a way that induced or caused the third party to fail to perform the contract with Plaintiff; and (4) Plaintiff suffered damages caused by Defendant's intentional interference.  *NCRIC, Inc. v. Columbia Hosp. for Women Med. Ctr., Inc.*, 957 A.2d 890, 900 (D.C. 2008).

Plaintiff alleges that Cato and Palmer "intentionally and maliciously interfered with the agreements between Plaintiff and third parties," including Media Plus, Al Ahlia, Riad El Rayyes, and Al Ghad newspaper, thereby causing the third parties to breach their agreements with Plaintiff.  Compl. ¶¶ 69-70.  Cato's and Palmer's allegedly interfering conduct consisted of "obtaining, without permission or compensation, Plaintiff's proprietary website and original works of authorship and using such information to place articles, papers, and other information on Defendants' own website," first MisbahalHurriyya.org and later Minbahalhurriyya.org.  Compl. ¶ 69.

Plaintiff has completely failed to produce evidence of the third and fourth elements of tortious interference with contract; namely, that Cato's or Palmer's intentional interference caused a third party's failure to perform on a contract with Plaintiff or that the Plaintiff suffered damages as a result of Defendants' interference.  Even accepting as true all factual allegations related to this claim, Plaintiff cannot show that Defendants' actions amounted to "interference" with the contracts because Cato was a named party to contracts with all of the third parties named in the Complaint for services related to the Misbah Al Hurriyya website.  SOF 101 – 102, 104 – 106.  As an agent for Cato, any actions taken by Palmer would likewise not be considered to interfere with a contract to which his principal (Cato) was a named party.  Cato owns the Misbah Al Hurriyya website, so Cato's failure to obtain permission from Plaintiff before exercising control over the website likewise does not amount to an "interference" with any contract that Plaintiff may have with third parties.  The same analysis applies to any allegedly interfering acts performed by Palmer because his actions with respect to these contracts would have been undertaken on behalf of Cato.  Plaintiff has also failed to show that any of the third parties actually failed to perform their contracts, and consequently that Plaintiff suffered any resulting damages.  *See, e.g.*, SOF 108.  With no evidence of two of four elements required for a prima facie case of tortious interference with contract, Plaintiff cannot prevail on this claim.

###### F.    Cato and Palmer Did Not Interfere With Plaintiff's Nebulous "Business Opportunity" With Media Plus (Count 6)

The elements of tortious interference with prospective business advantage mirror those of interference with contract.  *NCRIC, Inc.*, 957 A.2d at 900 n.16.  Intentional interference with prospective economic advantage requires intentional and improper interference with "business expectancies, not grounded on present contractual relationships, but which are commercially reasonable to anticipate." *Furash & Co., Inc. v. McClave*, 130 F. Supp. 2d 48, 56 (D.D.C. 2001)

(quoting *Carr v. Brown*, 395 A.2d 79, 84 (D.C. 1978)); *see* RESTATEMENT (SECOND) OF TORTS § 766B. The defendant's interference must be improper, so "[c]ompetitive activity does not by itself constitute intentional interference with prospective business advantage, unless accomplished by wrongful or improper means, such as fraud." *Furash*, 130 F. Supp. 2d at 56.

Plaintiff alleges that Cato and Palmer "intentionally and maliciously interfered with the Plaintiff's agreement with Media Plus and the future business relationship of the parties by, among other things, obtaining, without permission or compensation, [Plaintiff's] website and original works of authorship and using such information to place articles, papers, and other information on [Defendants'] own website," first for the benefit of Cato, and, later Atlas. Compl. ¶ 63. Plaintiff complains that Media Plus ceased "all business relations with Plaintiff having to do with the Misbah Al Hurriyya Project, current and future." Compl. ¶ 63. Plaintiff also admitted in his deposition testimony that he does not know exactly what Cato or Palmer did to interfere with Plaintiff's business opportunities in the U.S. other than telling them that Hijazi no longer worked for Cato. SOF 112. There is no evidence that Cato or Palmer told Media Plus not to do business with Hijazi. SOF 59, 60. Hijazi also admits that no one has ever told him they would not do business with him because of his termination by Cato or because his reputation was damaged. SOF 60, 113. Most importantly, the business relationship was between Cato and Media Plus, not Hijazi and Media Plus. SOF 46, 47, and 53.

For reasons analogous to those recited above in Part III.E., Plaintiff cannot prevail on his claim for tortious interference with business opportunity. Additionally, Plaintiff has produced no evidence of his "business expectancies, not grounded on present contractual relationships, but which are commercially reasonable to anticipate" that Defendants' conduct allegedly extinguished. As in the tortious interference with contract analysis above, here Plaintiff cannot

possibly prove damages where he has completely failed to present proof of harm.  Without any

proof on required elements of tortious interference with business opportunity, Plaintiff cannot

possibly prevail on this claim.

**G.     Mr. Hijazi's Media Contact List is Not a Trade Secret (Count 9) and it Was Not Misappropriated**

Mr. Hijazi claims that after he was terminated, Cato misappropriated his trade secret in

the form of a Media Contact List.  There is no evidence, however, that the alleged list was a trade

secret or that anyone at Cato ever improperly accessed the list.  SOF 114 – 118.  To establish a

trade secret misappropriation claim under the D.C. Uniform Trade Secrets Act ("DCUTSA"), a

plaintiff must demonstrate (1) the existence of a trade secret; and (2) acquisition of the trade

secret by improper means, or improper use or disclosure by one under a duty not to disclose.

D.C. Code § 36-401; *DSMC*, 479 F. Supp. 2d at 77.  To be a trade secret, (1) information must

be secret; (2) its value must derive from its secrecy; and (3) its owner must use reasonable efforts

to safeguard its secrecy.  *DSMC*, 479 F. Supp. 2d at 77; *Catalyst & Chemical Servs., Inc. v.

Global Ground Support*, 350 F. Supp. 2d 1, 8 (D.D.C. 2004).  Information that is "generally

known within an industry," even if it is not generally known to the public, cannot constitute a

trade secret.  *Catalyst & Chemical Servs.*, 350 F. Supp. 2d at 9.  A combination of information

qualifies as a trade secret only when there is an added value to the combination over the value of

the individual parameters, i.e., when "the whole is more than the sum of the parts."  *Id.* at 10.

Maintaining trade secret status requires reasonable efforts, such as implementing confidentiality

agreements.  *Id.*

There can be no issue of material fact as to whether Mr. Hijazi's media contact list is a

trade secret because Mr. Hijazi has produced so little evidence to support such a theory.  To the

contrary, the evidence suggests that the information, to the extent it even existed, was not secret.

But even if the media contact list were a secret, Mr. Hijazi certainly did not use reasonable efforts to safeguard its secrecy.  While the law requires the use of only reasonable efforts, such as implementing confidentiality agreements, to protect secrecy, Mr. Hijazi's measures to keep the list secret fell far short of reasonable efforts.  Mr. Hijazi stored the list on the Cato computer system, where it could have been accessed by other Cato employees.  SOF 115.  Mr. Hijazi never requested that Cato sign a confidentiality agreement to protect his trade secret, SOF 114, nor did he ever identify the list as a trade secret or express his desire to keep the information secret.  *See* SOF 115 – 117.  The Media Contact List cannot, therefore qualify as a trade secret.

Even assuming the list was a trade secret, the DCUTSA defines "misappropriation" as follows:

> (A) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (B) Disclosure or use of a trade secret of another without express or implied consent by a person who:
>> (i) Used improper means to acquire knowledge of the trade secret; or
>> (ii) At the time of disclosure or use, knew or had reason to know that the trade secret was:
>>> (I) Derived from or through a person who had utilized improper means to acquire it;
>>> (II) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;
>>> (III) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>> (iii) Before a material change in his or her position, knew or had reason to know that the information was a trade secret and knowledge of the trade secret had been acquired by accident or mistake.

D.C. Code § 36-401(2); *DSMC*, 479 F. Supp. 2d at 79.  "Improper means" may include theft, bribery, misrepresentation, breach or inducement of a breach of duty to maintain secrecy, or espionage through electronic or other means.  D.C. Code § 36-401(1); *DSMC*, 479 F. Supp. 2d at 79.

As a practical matter, Cato could not have misappropriated Plaintiff's media contact list because Cato never found such a list after terminating Mr. Hijazi.  SOF 118.  Assuming, however, that Cato could find the list, Mr. Hijazi has produced no evidence suggesting that Cato obtained the list by improper means, such as theft, bribery, etc.  To the contrary, Mr. Hijazi alleges that Cato was able to access the list, which was stored in Mr. Hijazi's Cato email account, "by virtue of the parties' relationship and the fact that the account resided on Defendant Cato Institute's server."  Compl. ¶ 81.

Considering the absence of evidence on both (1) the status of the media contact list as a trade secret and (2) misappropriation, no rational trier of fact could find for Mr. Hijazi on his claim for misappropriation of trade secrets.

**H.**     **Defendants Are Entitled to Summary Judgment on Plaintiff's Claim for Monetary Damages and Injunctive Relief**

Mr. Hijazi seeks $1,219,000 in monetary damages, allocated as follows:  $69,000 in lost/reduced wages; $50,000 for copyright infringement, both U.S. and Jordanian; $500,000 for trademark infringement, both U.S. and Jordanian; $100,000 for misappropriation of trade secret; and $500,000 for damage to reputation.  SOF 122, 124 – 129.

Mr. Hijazi produced no evidence to support his damages claims prior to the close of discovery, despite several interrogatories directing him to do so, and repeated requests by Defendants' counsel.  SOF 119.  Mr. Hijazi also failed to timely identify any expert witness to testify to damages.  SOF 120 – 121.  Well after the close of discovery, during his March 24, 2010 deposition, Mr. Hijazi finally gave a rough calculation of his estimate of the damages to which he believes he is entitled.  SOF 122.  What Mr. Hijazi did not provide was any evidence, such as documents or expert testimony, to corroborate his deposition testimony on damages.  Mr. Hijazi's failure to timely disclose his damages calculations greatly prejudiced Defendants.

Defendants were unable to investigate any of the factual bases of Mr. Hijazi's damages claim or adequately prepare deposition to probe the claims.  Defendants also chose not to hire their own damages expert since Hijazi did not disclose any of his damages theories until after discovery had closed and after the deadline to disclose experts had passed.  As a result of this prejudice, Hijazi's damage claims should be stricken in their entirety.

Even if Mr. Hijazi's damage claims were timely disclosed, Defendants would be entitled to summary judgment on these claims.  This includes summary judgment on Mr. Hijazi's claims to damages for purported violations of his Jordanian trademark and copyright.  U.S. courts do not hear claims based on foreign trademark laws.  *See Majorica, S.A. v. Majorca International, Ltd.*, 687 F. Supp. 92, 95 (S.D.N.Y. 1988) ("[T]he trademark laws of a foreign country have no extraterritorial effect and cannot be asserted to support federal claims in a United States district court."); *see also Person's Co., Ltd. v. Christman*, 900 F.2d 1565, 1568-69 (Fed. Cir. 1990) ("The concept of territoriality is basic to trademark law; trademark rights exist in each country solely according to that country's statutory scheme.").  Since Mr. Hijazi cannot parse out which portions of his trademark and copyright damages are based upon his U.S. or Jordanian rights, his entire claim should be stricken.  SOF 125, 127.

In addition, Mr. Hijazi's claims to damages for copyright and trademark infringement, misappropriation of trade secret, and damage to reputation cannot be proven on the basis of Mr. Hijazi's testimony alone.  This jurisdiction requires expert testimony "when the subject matter at issue is so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman." *Columbus Properties, Inc., v. O'Connell*, 644 A.2d 444, 447 (D.C. 1994).  Even though Mr. Hijazi repeatedly admitted that his damage claims would require an expert to calculate, Mr. Hijazi has not identified any expert witnesses to provide testimony on

damages, nor did he answer interrogatories seeking his damages theory.  SOF 120 – 21.  Without expert testimony or any evidence of actual damages, Mr. Hijazi cannot prove his case for monetary damages.

The lost/reduced wages claim is the only component of Mr. Hijazi's alleged damages that is arguably a proper subject for lay witness testimony.  Rule 701 of the Federal Rules of Evidence limits lay witness opinion testimony to opinions that are rationally based on perception and not based on scientific, technical, or specialized knowledge.  D.C. has a tradition of permitting lay witnesses to testify about their own lost wages and the value of converted tangible personal property.  *See, e.g.*, *Rosenthal v. Sonnenschein Nath & Rosenthal, LLP*, 985 A.2d 443, 454 (D.C. 2009); *Hartford Accident & Indemnity Co. v. Dikomey Manufacturing Jewelers, Inc.*, 409 A.2d 1076, 1078 (D.C. 1979).  Nevertheless, even on Mr. Hijazi's claim for lost/reduced compensation, Defendants are entitled to summary judgment because Mr. Hijazi has completely failed to produce any evidence to support his own self-serving deposition testimony.  SOF 131.  For example, even though Mr. Hijazi gave untimely notice to Defendants that he seeks damages for his reduced wages at his present job, he has not produced a single document to show his current wages.  SOF 131 – 32.  As a result, Mr. Hijazi will be unable to prove his lost wages.  For these reasons, the Court should enter judgment in favor of Defendants on all of Hijazi's damage claims.

Mr. Hijazi has also failed to establish that there is any continuing harm resulting from Defendants' actions complained of in his Complaint.  As a result, Mr. Hijazi is not entitled to injunctive relief and summary judgment on this issue should be granted to Defendants.

## VI.   DEFENDANTS ARE ENTITLED TO JUDGMENT ON THEIR COUNTERCLAIMS

As established above, Defendants are the proper owners of the Misbah al Hurriyya mark and the design of the website and so Defendants are entitled to summary judgment on Counts 1 and 2 of their counterclaims.  To the extent Hijazi has actually ever used the Misbah al Hurriyya mark, Defendants are also entitled to Judgment on Counts 3 and 4.[5]  Because Hijazi sent numerous threatening letters to Cato's and Atlas's vendors, SOF 134, 137-141, Defendants are also entitled to judgment on Count 4.  As a result, Defendants should be awarded $52,988.74 in damages plus attorneys' fees.  SOF 138-144.

## VII.   CONCLUSION

For the reasons set forth above, Defendants are entitled to summary judgment on all counts of Plaintiff's Complaint and in favor of Defendants on all counts of Defendants' counterclaims.


Dated:  May 28, 2010                 By:   /s/ Scott J. Pivnick

                                     Scott J. Pivnick (DC Bar No. 455195)
                                     Sarah R. Greene (admitted *pro hac vice*)
                                     PILLSBURY WINTHROP SHAW PITTMAN LLP
                                     2300 N Street, NW
                                     Washington, D.C. 20037
                                     Tel.:  (202) 663-8000
                                     Fax: (202) 663-8007
                                     scott.pivnick@pillsburylaw.com
                                     sgreene@pillsburylaw.com

                                     *Counsel for Defendants Atlas Economic Research Foundation, The Cato Institute and Tom Palmer*

---

[5]   Either Mr. Hijazi never used the Misbah al Hurriyya mark in commerce in the United States and so does not have any rights to the name or he used the mark in commerce and therefore infringes Defendants' Misbah al Hurriyya mark

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

GHALEB MOHAMMAD ISHAQ MR. HIJAZI )
d/b/a/ )
LAMP OF LIBERTY (a/k/a *Misbah al Hurriyya*) )     Civil Action No.
)     1:09-cv-01123
    *Plaintiff*, )
)
v. )
)
ATLAS ECONOMIC RESEARCH FOUNDATION, )
THE CATO INSTITUTE, and )
TOM G. PALMER, )
)
    *Defendants.* )
_____)

**[PROPOSED] ORDER**

THIS MATTER came upon the motion of Defendants for Summary Judgment.

It appearing after review of all parties' filings that Plaintiff has failed to make a showing

sufficient to establish the existence of elements essential to his case and on which he bears the

burden of proof at trial, it is therefore

ORDERED that Defendants' Motion for Summary Judgment is GRANTED.


Entered this _____ day of _____, 2010


_____
Henry H. Kennedy, Jr.
United States District Judge


Copies to all counsel of record

402027652v2